## POTTS *v.* BOWLER.

Railroad.— Common Carrier — A Cause of Action for Damages for Loss of Goods May be Assigned.

The right to recover damages for loss of goods by common carrier may be assigned and the assignee may sue for same by making the assignor a party defendant.

Same — Regular Agent — Subagent.

Conceding that the evidence conduced to prove, or it did prove, that the defendants did not know that Ballard was assuming to act for them in the reception of the wheat, and that they had never knowingly approved or sanctioned such assumption, or recognized his appointment as subagent, nor his acts as such; still the evidence proves that the wheat was delivered to Ballard and put inside the depot, and that Ballard had before and after been acting as freight agent by appointment, and with the knowledge of the regular appointed agent. *Held*, that these facts impose on the carrier the obligation to carry and deliver the wheat.

Same — Implied Authority — Obligatory Effect of Unauthorized Acts of Another.

The defendants by becoming the owners of a railroad and assuming the character of common carrier are bound not only to transport goods delivered to them, but are bound to carry all goods delivered for transportation. They are also bound to know by whom their depot is kept and by whom their business is done.

Same — Strangers or Other Persons Are Not Bound to Inquire.

Strangers or other persons delivering goods for transportation are not bound to inquire whether the person found at the depot ready to receive goods is authorized to transact such business, and the carriers cannot evade their responsibility for failure to carry and deliver goods so received.

Depositions — Exceptions to.

> Where exceptions are not taken to the decision of the court in sustaining exceptions to the evidence it cannot be subject to revision by the Supreme Court.

APPEAL FROM KENTON CIRCUIT COURT.

February 20, 1868.

OPINION BY JUDGE MARSHALL:

This action is brought by Potts to recover from Bowler, Stewers, and the two Gedges as owners of the Kentucky Central Railroad as common carriers the damages sustained by their failure to carry on said road, and to deliver as directed seventy sacks of wheat alleged to have been delivered by the plaintiff to them at their depot in Nicholasville, one of the termini of their road, to be transported on their road to Covington and there delivered to or for John Todd.

The plaintiff alleges that he purchased the wheat as the agent of Todd, and with his money, and after proper averments of the delivery of the seventy sacks in good order to the carriers at their depot place of receiving freight at Nicholasville, to be shipped to Todd at Covington, their promise to deliver it, their failure to do so, its consequent loss and the failure of said defendants to account for it; the plaintiff also states that he had paid to Todd $217, the value of the wheat and sacks, and Todd had transferred to him the right to the damages recoverable from the carriers— and Todd, made a defendant, admits by failing to answer this averment as to the transfer, the truth of which he also proves as a witness.

The other defendants, after filing an answer in which they deny in detail any knowledge or information sufficient to found a belief as to the several facts stated in the petition, filed an amendment in which they deny expressly that the plaintiff delivered said wheat to them at their depot in Nicholasville, or that they undertook and promised to deliver the same to Todd or any other person. These express denials present the material specific issues on which the case was tried and decided.

Several exceptions to testimony were taken, but the case upon the law and the facts was submitted to the court with the agreement that the exceptions to evidence (except one which had been decided) should be decided at the time of rendering the final

judgment. At that time the defendants' exceptions to two ques-
tions and answer in Smith's second deposition were sustained.
But the decision was not excepted to by the plaintiff, and is,
therefore, not subject to revision by this court. No other ex-
ceptions appear to have been expressly decided on at the time of
the judgment. And although the plaintiff had taken a formal
bill of exceptions to the decision of the court on exceptions to
Smith's first deposition, the bill does not show the part excepted
to but refers for it to the exceptions filed, and these exceptions
seem to have been lost or mislaid, so that they are not copied and
form no part of the transcript before us.

Whether the omission may be supplied by the examiner's note
on the face of the deposition that "The defendants except to the
statements of Owens foregoing as incompetent evidence in this
case," it is not necessary to decide, because we are satisfied that
no part of the deposition is incompetent, and especially that the
statements of Owens made to Ballard at the time of delivering
the wheat to him at defendants' depot and heard by the witness,
being a part of the *res gestæ,* are entirely competent, and par-
ticularly when taken in connection with the statement of the
witness that Ballard was acting as the clerk of James Saffel, the
regular freight agent, that at the time he did nearly all the busi-
ness, and that he had been appointed by Saffel, the regular agent,
to attend as freight agent.

The witness states that Owens (a wagoner) delivered for Potts
the seventy sacks of wheat to Ballard at the depot in Nicholas-
ville, telling him to ship it to John Todd, Covington, Ky. He
also states that the sacks were marked with the name of John
Todd, which is not only probable, but is expressly stated by Todd
himself. Owens also proves the delivery of the wheat at the
depot to Ballard, who was acting as clerk, and was, as he says,
acting in the receipt and delivery of freight for the railroad in the
fall or winter of 1862, within which time the wheat was delivered,
and that he signed receipts for freight. He says he told Ballard
the wheat was to be shipped to Todd, at Covington, but does not
remember whether he mentioned Todd's first name. But whether
he did or not, the name was on the sacks, and it is moreover to be
inferred from the evidence that other wheat had been shipped
from the same depot to John Todd at Covington, and it does not
appear that there was any other Todd at Covington, or any other
known depot in Nicholasville.

Owens also states that the wheat when delivered was put in the depot. Whether it was ever placed in the cars for transportation does not appear. But it is certain it was not delivered as directed —and no account is given of it after it was delivered to Ballard at the depot. The question, therefore, is whether there was such delivery of the wheat to the carriers as bound them for its transportation and delivery at Covington as directed.

The only grounds relied on to establish a negative answer to this question are, that Ballard was not the regular agent appointed by the carriers or their board of directors to receive freight for their road at Nicholasville, that their regularly appointed agent for that purpose was not authorized to appoint a subagent, and that they are not bound by the acts of such subagent, unless recognized by them, or impliedly authorized by the recognition of similar acts of the subagent, or by the recognition of that or other similar appointments by the regular agent. And it is proved by the pay clerk of the defendants, their only witness, that he knew nothing of Ballard as acting for them at Nicholasville, that his name was not on the pay-roll or on other books of the defendants as an employee, that he knew nothing of his having signed bills of lading or received freight for them, that their freight agents are appointed by order of the board, which requires a bond, etc., from him, and he exhibits a bond from Saffell as ticket and freight agent at Nicholasville. But conceding that this evidence conduces to prove, or that it proves, that the defendants did not know that Ballard was acting or assuming to act for them in the reception of freight at Nicholasville to be carried on their road, and that they have never knowingly and intentionally approved or sanctioned such acting or assumption, nor recognized the validity of his appointment as clerk or subagent, nor of his acts or authority as such, still the plaintiff's evidence above stated, competent, uncontradicted, and not now to be questioned, proves, and, as the case stands on this record, proves conclusively, that this wheat was delivered to Ballard at the depot of the carriers, and put inside of the depot when so delivered, and that Ballard was then and for some time before and after acting as freight agent at that depot in the receipt and delivery of freight, by the appointment and certainly with the knowledge and consent of the regularly appointed agent, who does not appear to have been at the depot when the wheat now in question was delivered.

Upon these facts we are clearly of opinion that the delivery of the seventy sacks of wheat to Ballard at and in the depot with directions to ship it to John Todd (or to Todd), (whose full name was on the sacks) at Covington, Ky., imposed on the carriers the obligation of carrying and delivering this freight as directed— and as the obligation arose from these facts, it is neither destroyed nor impaired by the failure of Ballard to give, and of Owens, the wagoner, who delivered the wheat, to ask for a bill of lading, which could only have rendered more certain the fact and object of the delivery.

This conclusion is not inconsistent with the principles for which the counsel of the appellees contends, as we understand them. The question of implied authority and of the obligatory effect upon one person for acts of another not directly authorized but done for him or in his name must depend upon circumstances which in different cases may be so variant that it would be difficult to limit or define them, unless in very general terms. But it is obvious not only that the acts of the party who is sought to be held bound, but his obligations and duties, and the consequent rights as well as the duties of others and of the public, constitute most important elements in determining how far he may be bound by others. Much too must depend upon the nature of the business in which the party for whom the act is done is engaged, or on the relation he occupies, and on the question whether the act done or the authority claimed be necessary in consequence of what has already been done or omitted by the party whose duty it is to do the act or to provide for its being done. Some duties are of so urgent nature that if the person primarily bound do not perform the act required any stranger may do it at his cost or on his responsibility. In the most obvious cases of this last description there may be, it is true, a public necessity, independent of any individual obligation, that the act should be done, as well as a private duty resting on a particular individual to do it or have it done.

In the present case the principal defendants by becoming the owners of this railroad and assuming the character of common carriers have thereby undertaken and are bound not only to transport goods properly delivered to them for transportation, but are bound by themselves or agents to receive and transport all goods which may be lawfully transported, if so delivered for trans-

portation. And having established a depot at Nicholasville for the reception of goods for transportation on the road, if not bound to keep it open at all seasonable hours and by themselves or agents to be ready for that purpose, they are bound to be thus prepared while the depot is in fact open for the reception of goods. They are bound also to know how their depot is kept, and how and by whom their business therein is done; and strangers or any persons bringing goods to the depot to be delivered there for transportation are not bound to inquire whether the person or persons whom they find there ready to receive them have been regularly authorized by ordinance of the distant board of managers to transact such business for them or not. They have a right to assume, and especially if, as in this case, the person undertaking to receive, has been and is habitually acting in that capacity at the depot, that he is properly authorized to receive goods for transportation by the carriers for whom he undertakes to act, and the carriers cannot evade their responsibility for failing to carry and deliver the goods so received on the ground either that the person has not been formally appointed by them to do such acts, or that they were ignorant of his having habitually done them. It is their duty to provide for the doing of such acts; and the public whose convenience and necessities require the performance of these acts which it is the duty and undertaking of the carrier to perform have a right to assume that the persons who actually and openly perform them at the depot are there for that purpose with the knowledge and at any rate by the authority of the carriers themselves.

Entertaining these views with regard to the principles of law applicable to the facts conclusively established by the evidence in the record, and being also satisfied that under the Code (section 31) the action was properly brought in the name of Potts, Todd being made a defendant, we are decidedly of opinion the judgment against the plaintiff is inconsistent with the law *upon* the facts, and is, therefore, erroneous. Wherefore, the judgment is reversed, and the cause remanded for a new trial on principles consistent with this opinion.